FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAY 12 PM 1: 24

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARY MILLER,

    PLAINTIFF,

E.                                                    Case No.: CV-97-J-1855-S

NATIONAL HEALTHCARE OF
HARTSELLE D/B/A HARTSELLE
MEDICAL CENTER.

    DEFENDANT.

ENTERED

MAY 1 2 1999

## MEMORANDUM OPINION

Currently pending before the court is the defendant National Healthcare of Hartselle

d/b/a Hartselle Medical Center's motion for summary judgment (doc. 31), to which the

plaintiff filed a brief in opposition ("plaintiff's opposition"). Thereafter, the defendant filed

a reply to plaintiff's opposition. The defendant having further requested oral argument on

its motion for summary judgment, this matter was heard on the court's motion docket of May

11, 1999 at which both parties were present by and through their counsel of record.

### I. Procedural History

Plaintiff commenced this action on July 27, 1997 by filing a complaint alleging that

the defendant discriminated against her on the basis of her age, in violation of the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and also that the

defendant retaliated against her for taking medical leave, in violation of the Family Medical

Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*



The plaintiff filed an amended complaint on December 5, 1997 alleging violations of

the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA),

as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §

1161 *et seq*. ("COBRA").[1] Upon consideration of the pleadings, briefs, evidentiary

submissions, and oral argument, the court concludes that the motion for summary judgment

is due to be granted.

## II. Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows:  The

plaintiff was hired by the defendant on April 4, 1990 as a licensed practical nurse.  Plaintiff

was absent from work beginning on January 9, 1996 due to surgery for a ruptured vertebrae.

Complaint at ¶¶ 6-7.  No contention is raised by either party that this absence was in any way

unauthorized.  Plaintiff alleges that on March 4, 1996, she informed the defendant's Human

Resource department that she would be able to return to work on March 25, 1999.  The

plaintiff further alleges that she, at that time, stated her preference for the 7 p.m. to 7 a.m.

shift or the 11 p.m. to 7 a.m. shift.  Complaint at ¶ 8.  The plaintiff had worked a "modified

shift" of 7 p.m. to 7 a.m. before she took leave for her surgery.  However, plaintiff alleges

that she was told that only the 7 a.m. to 7 p.m and 3 p.m. to 11 p.m shifts were available.

Plaintiff further alleges that she learned on March 30, 1996, that a younger individual was

given an available position on the 11 p.m. to 7 a.m. shift.  Complaint at ¶¶ 9-11.  Plaintiff

---

[1]The defendant alleges in its motion for summary judgment that the plaintiff never filed
an amended complaint after the court granted plaintiff's motion to amend.  Defendant's motion
for summary judgment at 2.  However, court records clearly reflect that the amendment was filed
on December 8, 1997, as document 12.

further alleges that since filing a complaint with the EEOC on September 20, 1996 she has been retaliated against by receiving work schedules which include her working four or five days in a row. Complaint at ¶ 12.

Plaintiff alleges that she was involuntarily transferred from her preferred shift, although she was given her choice of the other two available shifts. Plaintiff's opposition at 1-2. Plaintiff also alleges that she was called to work a "fill-in" shift on March 31, 1996 and on that date learned that a younger individual, Violet Mayo, "was working the night shift in her place." Plaintiff's opposition at 2. Plaintiff acknowledges that Ms. Mayo was hired on January 30, 1996, during the plaintiff's absence from employment. Plaintiff's opposition at 2. On September 20, 1996, plaintiff filed an EEOC Charge against the defendant alleging age discrimination.[2]

The plaintiff also alleges that the defendant terminated her employment because she would not accept either of the available shifts the defendant was able to provide. The plaintiff at her request, was then placed in "as needed" ("PRN") status, which carries no benefits. Plaintiff states that she was entitled to purchase health insurance continuation coverage under COBRA, but did not receive a letter offering her this coverage until the end of July 1996. Plaintiff' opposition at 2. The plaintiff was rehired to regular, night shift employment on November 19, 1996. Plaintiff's opposition at 2. The defendant alleged at oral argument that no full-time LPN's were hired for this shift between March 25, 1996 and

---

[2]While the defendant alleges that this filing was beyond the 180 requirement for filing of an EEOC claim (defendant's brief at 25-26), in the light most favorable to the plaintiff, this claim was filed 173 days after the plaintiff learned of the facts which she claims supports her EEOC charge. *See Hargett v. Valley Federal Savings Bank*, 60 F. 3d 754, 760-61 (11th Cir. 1995).

November 19, 1996, the date the plaintiff returned to this full-time position. The defendant

further alleged in its brief and at oral argument that although several full-time LPN's left the

night shift during this period of time, none of them were replaced due to fewer patients being

hospitalized from March to November.[3]

### III. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact that the moving

party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party
> who fails to make a showing sufficient to establish the existence of an element
> essential to that party's case, and on which that party will bear the burden of
> proof at trial. In such a situation, there can be no genuine issue as to any
> material fact, since the complete failure of proof concerning an essential
> element of the non-moving party's case necessarily renders all other facts
> immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears

the initial responsibility of informing the court of the basis for its motion and identifying

those portions of the pleadings or filings which it believes demonstrates the absence of a

genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party

---

[3]The defendant further explained in its brief and argument that the winter months are
"respiratory season" which results in increased hospitalizations during this time each year.
Further, the defendant alleges that the number of LPN's needed are based on the number of
patients in the hospital at any given time.

to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence

5

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 47 U.S. at 251-252.

## IV. Discussion

The plaintiff contends that defendant discriminated against her by not reinstating her to the same shift after her absence. The plaintiff does not dispute that the defendant did offer the plaintiff her choice of two other shifts.[4] Plaintiff's depo. at 78. To establish her claims under the ADEA and FMLA, the plaintiff states that the two shifts she was offered are not "equivalent positions" as that term is defined by the FMLA, 29 U.S.C. §2614, and thus the offer of the other two available shifts was an adverse employment action.

In *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428 (11th Cir.1998), the Court specifically addressed the standard to apply when a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA. The Court states that a burden shifting scheme is employed, as follows: The plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate reason was a pretext to mask unlawful discrimination. *Turlington*, 135 F.3d at 1432, citing *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995).

---

[4]While the plaintiff makes repeated references to the reason she wanted to work the night shift, and who knew of her preferences and the reasons therefore, the court finds that these references to what other people knew are hearsay as well as completely irrelevant to the issues in this case. Essentially, the plaintiff wanted to work the night shift as a matter of personal convenience involving child care.

To establish her prima facie case, the plaintiff must establish that 1) she is a member of a protected group of persons between the ages of forty and seventy; 2) that she was subject to an adverse employment action; 3) that a substantially younger person filled the position that she sought or from which she was discharged and 4) that she was qualified for that position. *Turlington*, 135 F.3d at 1432. The first and last elements are not disputed by the parties. Defendant's brief at 17. As to the second element, the plaintiff apparently alleges that the offer of a shift other than her first and only choice was an adverse employment action. Further, plaintiff apparently argues that the reason for this "adverse action" was due to her age or to her having taken medical leave.[5]

The Eleventh Circuit has examined the question of what constitutes an adverse employment action and held that a "reasonable person" standard should be applied. Quoting the Seventh Circuit, the Eleventh Circuit states that "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Doe v. DeKalb County School District*, 145 F.3d 1441, 1449 (11ᵗʰ Cir.1998) (citations omitted). The court then quotes, "[o]therwise ... every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.... Thus, not everything that makes an employee unhappy is an actionable adverse action." *Doe v. DeKalb County*, 145 F.3d at 1449 (citations

---

[5]Although plaintiff does not directly make this argument, plaintiff does allege that her claims are brought, in part, under the ADEA. "In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion. *Maddow v. Proctor & Gamble Co., Inc.*, 107 FR.3d 846, 851 (11ᵗʰ Cir.1997).

omitted). This court finds that an offer of a different shift for the identical position is, at most, a lateral transfer.

The plaintiff relies heavily on the Department of Labor regulations promulgated under the FMLA for support for the position that a different shift is not an "equivalent" position.[6] Plaintiff's opposition at 3. However, even the regulations cited by the plaintiff recognize that "the employee is ordinarily entitled to return to the same shift or the same or equivalent work schedule." 29 C.F.R. § 825.215(e)(2). In the facts presented to this court, the defendant offered the plaintiff an equivalent work schedule. The plaintiff declined to accept such employment, preferring to work on a PRN basis instead. The plaintiff does not allege that anyone at all was hired to work the shift she wanted from the time she became available to return to work until the date she was hired to return to work on the night shift.[7] As such, this court is unable to find an adverse employment decision made by any entity other that the plaintiff. Even *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268 (1998), on which the plaintiff relies, states that "a tangible employment action constitutes a significant change in employment status, such as ... reassignment with significantly different

---

[6]While this could theoretically support plaintiff's claim under the FMLA, the plaintiff provides no support for her proposition that a different shift is evidence of age discrimination under the ADEA.

[7]While a younger LPN was hired on a part time basis to work the night shift while plaintiff was on her FMLA leave, plaintiff has wholly failed to show that this LPN took plaintiff's particular position. The defendant argues that this individual was hired part-time to fill a full-time position vacated by a night shift LPN other than the plaintiff. Defendant's brief at 19, 20. Plaintiff apparently wants this court to rule that the defendant should have terminated this LPN to make room for the plaintiff on her shift of choice.

8

responsibilities, or a decision causing a significant change in benefits..." In the facts before this court, the plaintiff, on the date she was released to return to work, was offered the exact same job with the exact same benefits, only for a different shift. The plaintiff declined to accept either of the other shifts offered to her and therefore chose to terminate her benefits which accompanied full-time employment. Plaintiff's depo. at 78, 80. Plaintiff's analogy to *Ellerth* fails. Any hardship on the plaintiff from the PRN status was caused by the plaintiff herself.

Plaintiff also argues that her "removal" from the night shift meant the loss of the shift differential that shift paid. Plaintiff's opposition at 6. Plaintiff argues that she would have been "harmed" by accepting the day or evening shift. However, plaintiff then chose to work PRN and declined all full time employment from the defendant. Further, plaintiff would have received the shift differential if she had accepted the full-time second shift position which was offered to her.[8] Defendant's brief at 4. Although plaintiff argues that her child care obligation was an objective, external factor and thus the reasonable person standard expounded in *Doe v. DeKalb County* was met, this court cannot find that a child care obligation makes plaintiff's behavior in refusing all shifts other than the 11 p.m to 7 a.m. or 7 p.m. to 7 a.m. that of a "reasonable person." 145 F.3d at 1449 (stating that not "every unkind act" amounts to an adverse employment action). Truly, wanting to care for a grandchild during the day and work all night rather than make alternative arrangements can

---

[8]The second shift received a differential of $1.00/hour; the third shift received a differential of $1.25/hour. Thus, plaintiff's claim of harm in not receiving the third shift is questionable, when she refused the second shift as well.

9

only be viewed as a matter of personal preference. "[N]o panel of this circuit has ever listed a plaintiff's particular subjective preference as a basis for its holding that a transfer was adverse." *Id.*

The plaintiff argues that a "reasonable jury may well conclude that [the defendant's] real motivation was to replace [the plaintiff] with younger nurses...." Plaintiff's opposition at 7. However, this court cannot find the remote existence of such a possibility enough to find a genuine dispute of material fact. The evidence presented by plaintiff does not establish a sufficient disagreement to require submission to a jury. Rather, it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-252. The plaintiff has failed to produce sufficient evidence to support an inference that the defendant based its employment decision on an illegal criterion. *Maddow v. Proctor & Gamble Co., Inc.*, 107 FR.3d 846, 851 (11th Cir.1997). All the evidence presented by both parties supports a conclusion that the night shift was unavailable due to the reduction of the number of LPN's needed for that shift. The plaintiff stated in deposition that she was aware that the number of patients in the hospital determined the staffing needs. Plaintiff depo. at 64-66.

Assuming that the court did find the plaintiff established a *prima facie* case of discrimination, the defendant has asserted legitimate, nondiscriminatory reasons for failing to return the plaintiff to the shift she was working at the time she took leave, namely that it needed fewer LPN's because of fewer patients in the hospital. Defendant's brief at 18. Plaintiff has offered no evidence at all that this asserted reason by defendant is pretextual.

In consideration of the foregoing, this court is unable to find an adverse employment decision by defendant such that plaintiff meets her burden of establishing a prima facie case.

10

As such, the defendant's motion for summary judgment on the plaintiff's ADEA claims be and hereby is granted.

Similarly, the plaintiff has failed in its burden of proof to establish a claim under the Family Medical Leave Act. Under 29 U.S.C. § 2614(a)(1), the plaintiff was entitled, after her return from leave, (a) to be restored to the position she held when she her leave commenced; or (b) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

Where, as here, the plaintiff's claim of discrimination is based on circumstantial evidence, the analytical framework for examining that claim should be the same as that used in Title VII actions. *See Dollar v. Shoney's Inc.*, 981 F.Supp. 1417, 1419 (N.D.Ala. 1997) (citations omitted). Thus, the Supreme Court's three prong test for focusing the court's examination of the evidence and allegations is utilized in assessing this claim. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981). Mirroring the analysis for the plaintiff's claim under the ADEA, the plaintiff must first establish a *prima facie* case of discrimination, which requires proof that (1) she availed herself of a right protected by the FMLA; (2) she thereafter suffered an adverse employment decision; and (3) there was a causal connection between the two events. *Dollar*, 981 F.Supp. at 1420; citing *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir.1997). Such a prima facie case creates a presumption of unlawful, disparate treatment.

11

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Dollar*, 981 F.SUPP. at 1420; citing *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The defendant can feasiblely present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor co., Inc.,* 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir. 1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255 and n. 10.[9] The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

At least one court has found that an employment decision adverse to the plaintiff while she was absent from work on FMLA leave can be used to demonstrate a causal connection for purposes of stating a prima facie FMLA case. *Dollar*, 981 F.Supp. at 1420. Thus this court must examine the defendant's alleged nondiscriminatory reason for its action. *Id.*

As examined in depth above, the defendant alleged that it simply did not have any available night shift to offer the plaintiff. Instead, she was offered her choice of the day or

---

[9]The disappearance of the presumption does not compel summary judgment in favor of a Title VII defendant. The ultimate question remains the same: whether the plaintiff can persuade the trier of fact that he has ben the victim of intentional discrimination. *See Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994).

evening shift, which she declined. Defendant's brief at 18-20, 21. The defendant provides evidence that its decision to offer the plaintiff her choice of the two available shifts was based on staffing needs and not the fact that plaintiff had taken medical leave.

The plaintiff does not dispute that she reviewed the defendant's Leave of Absence Policy. Plaintiff's depo. at 169-170. That policy states that an employee *"has no absolute right to return to the exact position he or she held before taking leave, just an equivalent position"* (emphasis in original). Exhibit L, defendant's evidentiary submissions, at 18. As assessed above, the plaintiff argues that no shift other than the night shift constituted an "equivalent position." However, the plaintiff has failed to provide this court with any case that has found that not receiving the identical shift, all other factors being equal, constitutes a discriminatory action.[10]  The plaintiff stated under oath that she was offered a full time position with the same responsibilities she previously held. Plaintiff's depo. at 125,126. Plaintiff has also failed to show that the defendant's proffered reasons for not being able to return the plaintiff to the night shift was merely pretextual. *See* defendant's brief at 5 -6 (stating reasons why the night shift was not available at the end of March, 1996).

The plaintiff bears the burden of proof that the defendant's claims are pretextual. *Peters v. Community Action Committee, Inc.*, 977 F.Supp. 1428, 1434 (M.D.Ala. 1997);

_____

[10]This court also questions the plaintiff's claim of discrimination that accepting a different shift required the plaintiff to lose 25 cents/hour, because this is unreconcilable with the plaintiff then declining either of the offered shifts and requesting PRN status only, which apparently paid less than the second shift differential pay and included no benefits. *See* plaintiff's exhibit 2, stating PRN employees were paid an additional ten percent of their base pay, which in the plaintiff's case would be less than the $1.00/hour she would have received as differential on the second shift.

13

citing *Burdine,* 450 U.S. at 256; 101 S.Ct. at 1095. However, the plaintiff offers no evidence that the defendant's claims of staffing needs are a mere pretext, nor that the defendant was motivated by anything other than its staffing needs.

This court can find no evidence that the defendant took any action against the plaintiff because she requested FMLA leave. As such, the court finds that the defendant's motion for summary judgment is due to be granted on this claim.

The plaintiff further alleges that she was subject to discrimination in violation of the ADEA and FMLA because she filed an EEOC charge. Apparently this discrimination was in the form of excessive shifts. Complaint at ¶ 14. In support of this claim, the plaintiff argues:

> After Miller regained her job on November 19, 1996, she was treated differently from the way the Medical Center treated her prior to her protected activities. She received unfavorable scheduling assignments and a lack of assistance regarding routine medical expense claims. (¶¶ 23-25).

Plaintiff's opposition at 10. Plaintiff fails to offer any evidence that she was treated more unfavorably or differently from other employees. Nothing other than plaintiff's bare allegations are offered in support of this claim. This court finds that the defendant is entitled to summary judgment on the plaintiff's retaliation claim as well.

Lastly, the plaintiff argues that the defendant failed to provide the plaintiff with mandatory notice under COBRA, 29 U.S.C. §§ 1161-69. Plaintiff's opposition at 7. The parties agree that the event making the plaintiff eligible for COBRA coverage occurred on April 14, 1996, the date plaintiff was switched from full-time to PRN status. Plaintiff's opposition at 7, exhibit 3 thereto, and defendant's brief at 30. The plaintiff argues that

14

because she received the notice after the statutory requirement of 44 days, she was injured. Plaintiff's opposition at 7-8. Plaintiff further states that if the employer is found liable for the failure, penalties may be imposed, but the plaintiff does not offer any evidence that the defendant employer was so liable.

Plaintiff alleges that her injuries consisted of needing to see a physician during the time that she was working PRN status, but failed to do so because she was uninsured. Plaintiff does not state when she wanted to see a doctor, why she wanted to see a doctor, or offer any evidence of injury beyond her allegation that her health was at risk. Plaintiff's opposition at 9. Plaintiff never did utilize the COBRA coverage once she received a letter concerning the same in July, 1996. Plaintiff's opposition at 9, defendant's brief at 30.

This court finds that even assuming that the plaintiff established that the defendant was at fault in plaintiff's late receival of the COBRA notice, no remedy this court could fashion would allow the plaintiff any relief on this claim. The plaintiff is currently employed full time by the defendant and has full benefits, including medical insurance. The plaintiff did not incur any medical bills from April 14, 1996 to November 19, 1996 and as such, no monetary award could make the plaintiff whole. Furthermore, the plaintiff has not named the IBS/ASO North America, the defendant's plan administrator, as a party to this suit. Thus, other then ordering the defendant to make sure that its administrator is notified of a change in employee status on a timely basis, this court can give the plaintiff no relief. Furthermore, the plaintiff, after a full discovery period, has not offered any evidence that the defendant in this case was in any way at fault for plaintiff receiving her COBRA letter late.

15

The court also finds that the plaintiff does not allege that she requested information concerning the cost of continuing her health insurance premiums, although she was apparently aware that she had a right to purchase such coverage. *See* 29 U.S.C § 1132(c)(1), 29 U.S.C.§ 1166, exhibit c of defendant's evidentiary submissions at 22.

As such, this court can find no genuine issue of material fact in this claim of plaintiff's. The defendant's motion on this claim is due to be granted.

## V. Conclusion

In consideration of all of the foregoing, this court finds that the defendant's motion for summary judgment is due to be granted on all counts of the complaint.

It is therefore **ORDERED** by the Court that the defendant's motions for summary judgment be and hereby is **GRANTED** on all counts of the complaint and amended complaint. This case is **DISMISSED** with **PREJUDICE**.

**DONE** and **ORDERED** this the _____ day of May, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE